UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FAMILIES FOR FREEDOM; and JOHN DOE,

Plaintiffs,

v.

UNITED STATES BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Defendant.

-------------------------------------------------------------X

'08 CIV 5566

Index No:

JUDGE RAKOFF

COMPLAINT

RECEIVED
JUN 20 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to compel the production of agency records improperly withheld from Plaintiffs by Defendant.

2.    Plaintiffs seek to obtain the release of records on a matter of significant public concern, namely, records pertaining to the United States Immigration and Customs Enforcement agency's ("ICE") policies, procedures, and practices related to its current campaign of pre-dawn home immigration raids without judicial warrants (hereinafter "home raids").

3.    In recent years, ICE has greatly expanded its use of home raids and, accordingly, the efficacy, legality, and wisdom of this tactic has become the source of considerable concern for the general public as documented in the explosion of news reports on the subject. The Plaintiffs' FOIA request seeks, *inter alia*, specific information related to the widespread accounts of ICE officers' violations of the Fourth Amendment during the course of such home raids.  This information is not just relevant to the larger public policy questions surrounding the home raids

but also to a specific and central issue in the pending immigration removal proceedings arising out of the home raids: namely the admissibility of evidence obtained by ICE agents as the result of "widespread" violations of the Fourth Amendment. *I.N.S. v. Lopez-Mendoza,* 468 U.S. 1032, 1050 (1984).

4.     Upon information and belief, the home raids have been and continue to be conducted by Fugitive Operation Teams and similar ICE interior enforcement teams.  The home raids generally involve ICE agents going to a residence purportedly seeking to arrest a person who falls within one of their enforcement priority categories.  Such agents are, upon information and belief, typically armed only with administrative arrest warrants that do not authorize them to enter homes without consent.  Nevertheless, there are widespread reports of such officers unlawfully entering homes by, for example, breaking into homes, climbing through windows, kicking in doors, pushing their way in, lying to occupants, and even by using children to gain entry.  During the course of these home raids, the officers do not limit their focus to the target individual but instead use the home raids as a pretext to question anyone in or near the target residences who appears to them to be a non-citizen and then to detain anyone they believe to be without current immigration status. It is difficult or impossible for families to locate individuals arrested in these home raids, as they are often quickly moved to immigration detention facilities out of state.  ICE's practice of sweeping into communities, conducting a series of pre-dawn home raids, and the subsequent disappearance of arrestees to faraway immigration detention facilities has created waves of terror in immigrant communities in Nassau and Suffolk counties and across the country.

5.    Despite the prevalence and significance of ICE's campaign of home raids, there is very little information about this phenomenon available in the public realm, beyond anecdotal press coverage and individual accounts. The information sought here is essential to inform the American people about a matter of urgent and pressing public concern.    Moreover, the information sought here is urgently needed to ensure that John Doe and others arrested during home raids can present evidence in their pending removal proceedings of the widespread nature of the Fourth Amendment violations occurring in these home raids.  Evidence of the widespread nature of ICE's Fourth Amendment violations is critical to determine the admissibility of the central evidence in many of those proceedings because only egregious or widespread violations of the Fourth Amendment support suppression in immigration court.

## JURISDICTION AND VENUE

6.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 522(a)(6)(C)(i).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

7.    Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(a).

## PARTIES

8.    Plaintiff Families for Freedom is a New York-based multi-ethnic defense network by and for immigrants facing deportation.  Its office and principal place of business is located at 3 West 29th Street, Suite 1030, New York, New York 10001. Founded in September 2002, Families for Freedom is a membership-based organization with approximately 100 members, made up of immigrants who are in or have been in immigration removal proceedings, their

families and loved ones, and individuals at risk of deportation.   At least one Families for Freedom member was arrested in an immigration home raid and is now facing deportation. Families for Freedom is an unincorporated association and a project of the Urban Justice Center, a 501(c)(3) non-profit organization.  Families for Freedom's mission is to educate and organize families and communities affected by deportation.   It uses community education and mobilization, legal advocacy, and media work to forge collective campaigns and build support and awareness of the issues facing immigrant communities.

9.    Plaintiff John Doe is an individual who was arrested in one of the home raids that is the subject of the instant FOIA request.  During the raid on his home, ICE officers, who upon information and belief did not possess a judicial warrant authorizing them to enter the home, broke into John Doe's home through a window without the consent of any occupant.  John Doe is now in removal proceedings and the only evidence against him in those proceedings was obtained as the fruit of ICE's unlawful entry into his home in violation of the Fourth Amendment.  John Doe intends to move to suppress the evidence against him in his removal proceedings but requires access to the information sought in the instant FOIA to prove that ICE's violation of his Fourth Amendment rights was part of a "widespread" pattern of such violations. John Doe urgently needs this information as he is scheduled to appear in immigration court in September 2008.  John Doe resides in Suffolk County, New York and has chosen to use a pseudonym because he fears retaliation for asserting his rights under the Freedom of Information Act.

10.    Defendant United States Immigration and Customs Enforcement agency ("ICE") is a department of the U.S. Department of Homeland Security ("DHS") and is responsible for, *inter alia*, the interior enforcement of federal immigration statutes.

## STATEMENT OF FACTS

### Background on ICE Home Raids

11.    ICE, a branch of DHS, was formed pursuant to the Homeland Security Act of 2002. ICE's mission includes the enforcement of federal immigration laws.   ICE's Office of Detention and Removal Operations ("DRO") is responsible for arresting and detaining immigrants who are subject to removal.

12.    In June 2003, DRO released its ten-year strategic plan entitled, "Endgame." The plan provides that "the endgame to immigration enforcement" is the "removal of all removable aliens," which is estimated to be approximately 12 million people.

13.    In 2003, DRO also established the National Fugitives Operation Program ("NFOP") to locate, apprehend and remove persons with outstanding orders of removal who had failed to depart the United States (termed by ICE "fugitive aliens").   Each Fugitive Operation Team ("FOT") is typically comprised of seven ICE officers.  In fiscal year 2003, ICE had eight FOT, and each FOT's goal was to apprehend 125 "fugitive aliens."   Thus teams were initially incentivized to focus their efforts on high priority "fugitive aliens."

14.    In June 2004, the FOTs' goal was changed to require that at least 75% of the 125 "fugitive aliens" each team arrests annually must be "criminal aliens."   This change further focused the FOTs on high priority targets deemed to pose some danger to society. By the end of

fiscal year 2004, ICE had eighteen FOTs and by the end of fiscal year 2005, it had forty-four FOTs.

15.    In January 2006, the DRO radically revised its strategic priorities for the FOTs by implementing two revisions to the FOT annual arrest requirements.  First, the DRO abandoned its requirement that 75% of each team's apprehensions be "criminal aliens."  Second, it implemented an eight-fold increase on each FOTs' annual arrest quota without any attendant increase in the size of the FOTs.  By the end of fiscal year 2006, ICE had fifty-two FOTs, each required to make 1000 arrests per year.  Collectively, the 2006 policy changes represent a significant departure from DRO's prior increasing focus on priority targets.

16.    By the end of fiscal year 2007, ICE had seventy-five FOTs and had proposed to add six additional FOTs in fiscal year 2008.

17.    Upon information and belief, since the radical policy revisions of January 2006, FOTs and similar ICE interior enforcement teams have increasingly relied upon the tactic of pre-dawn home immigration raids without judicial warrants to attempt to meet their inflated annual arrest quotas.  In fiscal year 2007, ICE reported 30,408 arrests by its FOTs up from 7,958 arrests in fiscal year 2005; a significantly disproportionate increase to the number of FOT teams added between 2005 and 2007.

18.    Upon information and belief, FOT are now permitted to count any immigration arrest, even collateral arrests of merely undocumented immigrants who do not fall within their defined enforcement priorities, toward their quota of 1000 arrests per year.

19.    ICE has not made statistics publicly available to determine whether the significant increase FOT arrests since the 2006 policy changes is the result of more target arrests or, as

many suspect, whether ICE is inflating its FOT arrest statistics by focusing on collateral arrests during home raids of merely undocumented individuals who pose no danger to society.

20.    Based upon media and individual accounts, during a typical raid, an FOT or similar interior enforcement team[1], approaches a home armed only with an administrative arrest warrant. Such administrative arrest warrants do not empower ICE agents to enter a home without consent. The officers pound on windows and doors yelling "Police" and ordering the occupants to let them in.  If the occupants do not comply there are widespread accounts of ICE officers unlawfully entering homes by, for example, breaking into homes, climbing through windows, kicking in doors, pushing their way into homes, lying to occupants, and even by using children to gain entry.  Once inside, the ICE officers do not limit their focus to arresting the alleged target. Rather, in the shadow of the new inflated arrest quotas, the officers use the entry to arrest the target as a pretext to question and arrest as many people as possible in and around the home.

21.    Upon information and belief, ICE is continuing to regularly conduct home raids throughout the United States.

### Plaintiffs' FOIA Request to Defendant ICE

22.    Plaintiffs mailed Defendant a request dated April 9, 2008, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for the production of records pertaining to: (1) policies and procedures related to home raids; (2) database records related to home raids conducted in Nassau and Suffolk counties between January 1, 2006 and the present (hereinafter "designated home

---

[1] ICE has announced several similar interior enforcement operations including: "Operation Community Shield," "Operation Predator," "Operation Retract," and "Operation Return to Sender." ICE has not made clear whether home raids pursuant to these operations are also conducted by FOTs or whether they are conducted by similar interior enforcement teams. In any event, the legal and policy issues are the same for home raids conducted pursuant to all of these operations and the instant FOIA requested explicitly includes home raids conducted pursuant to these and other similar interior enforcement operations.

raids"); (3) a specific DRO memorandum entitled "Fugitive Operation Case Priority and Annual Goals"; (4) Fugitive Operation Team Plans for the designated home raids; (5) National Fugitive Operation Program Weekly Statistical Reports for the designated home raids; (6) records related to individuals encountered and arrested, target residences, disciplinary complaints, press releases, and post-investigation reports for the designated home raids; (7) information on cooperation agreements with local police departments in the jurisdictions of the designated home raids; and (8) internal ICE communications related to the designated home raids. A copy of the Plaintiffs' FOIA request is attached as Exhibit "A."

23. Plaintiffs also requested expedited processing of the FOIA request under 5 U.S.C. § 552(a)(6)(E) because there is a compelling and immediate need for the information sought. The compelling need arises from two independent sources: (1) because the American people need immediate access to the information sought to effectively evaluate the legality, efficacy and wisdom of ICE's ongoing campaign of home raids, and (2) because John Doe and similarly situated individuals who were detained by ICE during home raids are now in removal proceedings, the information sought herein could be determinative of the outcome of those proceedings, and those proceedings are likely to conclude before disclosure absent expedited processing.

24. Plaintiffs also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R § 5.11(k) because the information the Plaintiffs seek "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the [Plaintiffs'] commercial interest."

25.   Plaintiffs have no commercial interest in this matter.  They will make any information obtained as the result of this FOIA request available to the public, including the press, at no fee. Plaintiffs therefore meet the statutory requirements for a fee waiver.

26.   The request was delivered to ICE on April 15, 2008.

27.   By letter dated April 21, 2008, the ICE FOIA Director, Catrina Pavlik-Keenan, acknowledged receipt of Plaintiffs' FOIA request on April 18, 2008 and invoked the statutory ten-day "unusual circumstance" extension, 5 U.S.C. § 552(a)(6)(B), to the normal twenty-day time limit for responding to FOIA requests, 5 U.S.C. § 552(a)(6)(A)(i).  A copy of this letter is attached as Exhibit "B."

28.   ICE, by Ms. Pavlik-Keenan, sent a second letter to Plaintiffs also dated April 21, 2008. This second letter denied Plaintiffs' requests for a fee waiver and for expedited processing without explanation.   A copy of this letter is attached as Exhibit "C."

29.   On June 12, 2008, Plaintiffs sent a timely administrative appeal of the fee waiver denial to the DHS's Associate General Counsel via overnight mail.  The appeal was received by DHS on June 13, 2008.  The letter appealing the fee waiver denial is attached as Exhibit "D."

30.   ICE has failed to provide any further response to Plaintiffs' FOIA request.  It has now been more than thirty days since the date ICE acknowledges receiving the FOIA request.

31.   The failure of ICE to substantively respond to the FOIA request within the statutorily proscribed period results in constructive exhaustion of the Plaintiffs' administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).  Requests for expedited processing do not need to be administratively exhausted.   5 U.S.C. § 522(a)(6)(E)(iii).   Requesters exhausted their administrative remedies for a fee waiver by filing a timely administrative appeal.

32.  ICE has failed to make any substantive determination or release any records requested in Plaintiffs' FOIA request.

33.  There is virtually no information in the public domain that indicates the bases on which or the methods by which ICE agents conduct home raids.  There is also no information in the public domain regarding statistics about the prevalence of such raids.

34.  By failing to respond to Plaintiffs' request and constructively denying the requested records, ICE has withheld information contrary to the requirements of the FOIA statute and has frustrated Plaintiffs' efforts to gain access to information of great public importance.  There has been and continues to be significant public interest and media attention devoted to the questionable legality, efficacy, and wisdom of ICE's ongoing campaign of home raids.  A Westlaw search of newspapers articles conducted on June 12, 2008 found 736 articles written in 2007 and 2008 with the word "raid" together with the words "immigration" or "immigrant" in the title.

35.  Plaintiffs have a statutory right to the records they seek and there is no legal basis for Defendant ICE's failure to disclose them in full.

36.  Defendant's withholding of records is unlawful both in refusing to release documents and in causing unreasonable delay in the time it takes Plaintiffs to receive documents.

37.  The refusal to release requested records in a timely fashion compromises the safety and constitutional rights of hundreds or thousands of citizens, permanent residents, and others who live in residences where ICE will conduct future home raids.

38.   The refusal to release requested records in a timely fashion deprives John Doe and other similarly situated individuals of the opportunity for a full and fair adjudication in their pending immigration removal proceedings.

39.   The refusal to release requested records in a timely fashion deprives the American people of the information it needs to make a reasoned and sound determination as to the legality, efficacy, and wisdom of ICE home raid tactics.

### FIRST CLAIM FOR RELIEF
**Defendant ICE Failed to Disclose and
Release Records Responsive to Plaintiffs' Request**

40.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 39 as if repeated and incorporated herein.

41.   By failing to disclose and release the requested records, ICE has violated Plaintiffs' rights to ICE records under 5 U.S.C. § 552.

### SECOND CLAIM FOR RELIEF
**Defendant ICE Improperly Denied Plaintiffs' Request for Expedited Processing**

42.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 41 as if repeated and incorporated herein.

43.   ICE has violated Plaintiffs' rights to expedited processing under 5 U.S.C. § 552(a)(6)(E) and 6 CFR § 5.5(d).

### THIRD CLAIM FOR RELIEF
**Defendant ICE Improperly Denied Plaintiffs' Request for a Fee Waiver**

44.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 43 as if repeated and incorporated herein.

45.    ICE has violated Plaintiffs' rights to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R § 5.11(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Assume jurisdiction over this matter;

2) Declare that Defendant's refusal to disclose the records requested by Plaintiffs is unlawful;

3) Order Defendant to immediately make a full, adequate, and expedited search for the requested records;

4) Order Defendant to make the requested records available to Plaintiffs forthwith, and not later then August 31, 2008, and enjoin them from withholding the requested records;

5) Award Plaintiffs their costs and reasonable attorney's fees in this action as provided by 5 U.S.C. § 552(a)(4)(E);

6) Enjoin Defendant from assessing fees or costs for the processing of the FOIA Request; and

7) Grant such other and further relief as this Court may deem just and proper.


Dated: June 20, 2008
         New York, New York


Respectfully submitted,


By: _____

CARDOZO IMMIGRATION JUSTICE CLINIC
Peter Markowitz, Esq. (pm9053)
Assistant Clinical Professor of Law
Director, Immigration Justice Clinic
Cardozo School of Law
Immigration Justice Clinic
55 Fifth Avenue
New York, NY 10003
Phone: (212) 790-0340





# HOFSTRA
### U N I V E R S I T Y.

---

### School of Law
### Hofstra Law Clinic

Stefan H. Krieger
Director of Clinical Programs

Theo S. Liebmann
Associate Director of Clinical Programs

**Attorneys-in-Charge:**

K. Babe Howell
Assistant Clinical Professor
Criminal Justice Clinic

Stefan H. Krieger
Professor of Law
Housing Rights Clinic

Theo S. Liebmann
Clinical Professor
Child Advocacy Clinic

Peter L. Markowitz
Assistant Clinical Professor
Immigrant Justice Clinic

Serge A. Martinez
Associate Clinical Professor
Community and Economic
Development Clinic

Curtis E. Pew
Associate Clinical Professor
Securities Arbitration Clinic

Robert S. Thaler
Visiting Assistant Clinical Professor
Mediation Clinic

Laura P. Wren
Associate Clinical Professor
Political Asylum Clinic

April 9, 2008

FOIA Office
U.S. Immigration and Customs Enforcement
800 North Capitol St., NW
5th Floor, Suite 585
Washington, DC 20536
Atten: FOIA Officer: Catrina Pavlik-Keenan
      FOIA Requester Service Center Contact: Anastazia Taylor

### Re: Freedom of Information Act Request

To Whom It May Concern:

    This is a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), on behalf of the Families for Freedom, Puerto Rican Legal Defense and Education Fund ("PRLDEF") and John Doe[1] (collectively "The Requesters") to the U.S. Immigration and Customs Enforcement agency.

### A. Definitions

1) Target(s). In this request, the term "Target(s)" is defined as
    a) "an alien who has failed to depart the United States pursuant to a final order of removal, deportation or exclusion; or who has failed to report to a Detention and Removal Office ('DRO') after receiving notice to do so.",[2] or
    b) any alien who is sought under operations conducted as part of "Operation Community Shield," "Operation Predator,"

---

[1] "John Doe" is the pseudonym of an individual who was arrested in one of the Home Raids that is the subject of this FOIA request. John Doe is now in removal proceedings as the result of that Home Raid and has chosen to use a pseudonym herein because he fears retaliation for asserting his rights under the Freedom of Information Act.

[2] *See* Office of the Inspector General Report, "An Assessment of United States Immigration and Customs Enforcement's Fugitive Operations Teams", at 2 (March 2007) ("OIG Report"). For purposes of this FOIA request the term "target" should be construed to include the terms "fugitive" and "absconder" as used in the OIG Report.

"Operation Retract," "Operation Return to Sender," or any similar internal enforcement operations.

2) Other Subject(s). The term "Other Subject(s)" includes any non-Target who is encountered, arrested, questioned, apprehended, or detained during, or immediately before or after, and in the vicinity of a Home Raid by a Fugitive Operations Team ('FOT') or any other similar interior enforcement team.

3) The term Target(s) and Other Subject(s) should not be construed to refer to persons encountered during worksite enforcements investigations or operations.[3]

4) Record(s). The term "Record(s)" includes, but is not limited to, all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, or any other records of any kind.

5) Home Raid(s). The term "Home Raid(s)" refers to an enforcement activity of a FOT or any other Immigration and Customs Enforcement ('ICE') officer, acting alone or together with some other law enforcement agency, whereby such team or officer(s) seeks to execute a warrant for removal, arrest, or search at a residence in pursuit of a Target or Other Subject, or acting without a warrant seeks to enter a residence in pursuit of a Target or Other Subject.

**B. Request for Information:**

The Requesters requests the following Records:

1) Policies and Procedures

All Records created or current and in use, between January 1, 2006 and the present, setting forth policies or procedures related to operations to identify, locate, or arrest suspected Targets and Other Subjects as well as to conduct Home Raids, including but not limited to any documents setting or discussing arrest or other enforcement goals, quotas, or targets for FOTs or for other interior enforcement teams or operations.

2) Database Records

All Records related to Targets and Other Subjects apprehended during the following operations:

- Home Raids conducted in Nassau and Suffolk Counties in the State of New York (hereinafter "Nassau and Suffolk") on or about January 12, 2006;[4]
- Home Raids conducted in Nassau and Suffolk in or about October 2006;[5]

---

[3] *See* U.S. Immigration and Customs Enforcement ("ICE"), "Worksite Enforcement Advisory" at 1 (February 2008).

[4] *See* ICE Press Release, "2 Hondurans Wanted For The 1998 Murder Of A U.S. Citizen Arrested By Ice In Long Island," January 12, 2006 (http://www.ice.gov/pi/news/newsreleases/articles/060112longisland.htm, accessed February 21, 2008); *see also* News Releases, January 2006 (http://www.ice.gov/pi/news/newsreleases/archive/jan06.htm, accessed February 21, 2008)

2

- Home Raids conducted in Nassau and Suffolk on or about April 18, 2007, including but not limited to the Home Raid conducted on April 18, 2007 at 144 Union Avenue, Apt. 1, Riverhead, NY 11901;
- Home Raids conducted in Nassau and Suffolk on or about October 2007;[6] and
- any other Home Raids that took place in Nassau and Suffolk between January 1, 2006 to the present

(collectively the "Designated Home Raids") held in the following databases:

   a) Fugitive Case Management System ('FCMS') and Apprehension Reports

Please include data from all FCMS data fields and Apprehension Reports (either as individual Records, as a spreadsheet, or as other comprehensive compilations of data), including but not limited to classification of each apprehended Target or Other Subject, as (1) a Target posing a threat to the nation, (2) a Target posing a threat to the community, (3) a Target with a violent criminal history, (4) a criminal Target, or (5) a non-criminal Target.[7]  Please also include FCMS Records related to any administrative or judicial warrants of deportation/removal, arrest warrants, or search warrants relied upon in apprehending each Target or Other Subject.

   b) Deportable Alien Control System ('DACS') and ENFORCE Removals Module

Please include all data from all DACS databases and ENFORCE Removals Module databases, including but not limited to (1) "biographical records," including name, alias(es), nationality, date of birth, etc., (2) "detention records," including whether the alien is in the Office of Detention and Removal Operations' custody and where, (3) "case records," which include deportation or removal case information, and (4) "jail records," which include information on aliens serving sentences.[8]

## 3) Fugitive Operations Team Apprehension Goal

The DRO Memorandum, entitled "Fugitive Operations Case Priority and Annual Goals," January 31, 2006, including any subsequent versions or updates to the memorandum or any superceding memoranda.

## 4) Fugitive Operations Team Plans

All Records, created or current and in use, between January 1, 2006 and the present relating to all Fugitive Operations Team Plans, including but not limited to, reports, memoranda or planning documents submitted for approval to the DRO office in New York or to the National

---

[5] *See* ICE Press Release, "ICE arrests 10 child predators and sex offenders in Nassau County," October 11, 2007 (http://www.ice.gov/pi/news/newsreleases/articles/061012ny.htm, accessed February 21, 2008).

[6] *See* Editorial, "Profiling Hispanics," El Diario, February 16, 2008 (http://www.eldiariony.com/noticias/detail.aspx?section=25&desc=Editorial&id=1813696, accessed February 22, 2008).

[7] *See* OIG Report at 8 (citing Office of Detention and Removal Operations Memorandum, "Fugitive Operations Case Priority and Annual Goals," January 31, 2006.)

[8] *See* OIG Report at 15.

3

Fugitive Operations Program ('NFOP') in relation to each of the Designated Home Raids. Please also provide any documents that reveal whether any of those reports, memoranda or planning documents were approved by the NFOP or DRO.

5) <u>National Fugitive Operations Program Weekly Statistical Reports</u>

All Records, created or current and in use, between January 1, 2006 and the present relating to all NFOP weekly statistical reports related, in whole or in part, to Nassau and Suffolk, as well as any cities, towns, villages, or municipalities within Nassau and Suffolk.[9]

6) <u>Records Related to Designated Home Raids</u>

All Records, including but not limited to the fugitive apprehension reports, revealing any of the following information relating to any of the Designated Home Raid:

- a) Individuals arrested
    - i. the name and date of birth of any individual arrested;
    - ii. the nationality of any individual arrested;
    - iii. the race and ethnicity of any individual arrested;
    - iv. the location of any individual arrested;
    - v. name of the arresting officer for each individual arrested;
    - vi. name of the officer who examined each individual arrested;
    - vii. the date and time when each individual was arrested;
    - viii. whether or not each individual arrested was a Target, and what factor made that individual a Target (for example: prior deportation order, gang affiliation, criminal record);
    - ix. any warrant of deportation/removal, or search warrant relied upon in the course of arresting each individual;
    - x. any other document containing information on the arrestee that was relied upon in relation to the arrest, including any document containing a photograph and/or printed information related to the arrestee;

- b) Other Subjects Not Arrested During Home Raids
    - i. the name and date of birth of any Other Subjects encountered but not arrested during the Designated Home Raids;
    - ii. the nationality of any Other Subjects encountered but not arrested during the Designated Home Raids;
    - iii. the race and ethnicity of any Other Subjects encountered but not arrested during the Designated Home Raids;

- c) Location of arrests
    - i. address of any residence that ICE sought to enter in the course of the Designated Home Raids;
    - ii. address of any residence that ICE did enter in the course of the Designated Home Raids;

---

[9] *See* OIG Report at 17 ("In its National Fugitive Operations Program weekly statistical report, the office recorded, in separate columns, the total number of apprehended fugitive and non-fugitive aliens.")

iii. address of any residence that ICE sough, but failed, to gain entry in the course of the Designated Home Raids;

iv. for each such residence that ICE failed to gain entry, the reason for such failure (for example: lack of consent, no one home, etc.)

v. for each such residence entered, the date and time of entry and the duration of presence of any DHS officers;

vi. for each such residence entered, whether ICE possessed a warrant of any kind for a Target believed to be in the residence and, if so, the type of such warrant (for example: administrative warrant of removal, judicial arrest warrant, judicial search warrant);

vii. for each such residence entered, the basis of the belief that the Target sought was in the residence;

viii. for each such residence entered, whether the Targets(s) sought were found at the premises;

ix. for each such residence entered, the number of individuals arrested at the residence;

x. for each such residence entered, the manner and circumstances of entry into the residence;

xi. for each such residence entered, the legal authority for entry (for example: consent, judicial warrant, exigent circumstances, none)

xii. for each such residence for which "consent" formed the purported legal basis of entry, by whom and to whom consent was given to enter such residence and the circumstances under which consent was obtained;

d) Location Where no Arrests Were Made[10]

i. the name and date of birth of any individual present at a residence entered in the course of searching for a Target, where no arrests were made;[11]

ii. the nationality of any individual present at a residence entered in the course of searching for a Target, where no arrests were made;[12]

iii. the race and ethnicity of any individual present at a residence entered in the course of searching for a Target, where no arrests were made;

e) Forms

i. all G123A Complaint forms;

ii. all G-166C Memorandums of Investigation;

f) Complaints, Disciplinary Proceedings & Lawsuits

i. all documents related to civilian complaints related to the Designated Home Raids made by any Target, Other Subject or other member of the public;

---

[10] *See* 8 C.F.R. 287.8(f)(3) ("Adequate records must be maintained noting the results of every site inspection, including those where no illegal aliens are located").

[11] *See* 8 C.F.R. 287.8(f)(2) ("When consent to enter [a residence] is given, the immigration officer must note on the officer's report that consent was given and, if possible, by whom consent was given").

[12] *See* 8 C.F.R. 287.8(f)(2) ("When consent to enter [a residence] is given, the immigration officer must note on the officer's report that consent was given and, if possible, by whom consent was given").

    ii. all documents revealing the existence, parties, docket numbers, and courts of any affirmative law suits in the federal courts related to Home Raids anywhere in the United States;

    iii. all documents related to any internal complaints made by individual ICE officers related to the Home Raids anywhere in the United States;

    iv. all documents related to complaints of any kind by any persons related to the Home Raids anywhere in the United States;

    v. all documents related to any disciplinary actions taken against an ICE officer for actions relating to the any Home Raid anywhere in the United States.

g) all Press Releases; and

h) all Post-Investigation Reports, summaries, statistical reports, analysis, Records or communications between federal agencies or communications between federal agencies and local agencies.

## 7) State and Local Law Enforcement

The March 2007 OIG Report states: ". . . many teams have solicited the assistance of local law enforcement officers to participate in fugitive apprehensions."[13]

Please provide the following Records:

a) a list of agreements with counties, cities, towns, villages and municipalities, or any agent thereof, in Nassau and Suffolk whose law enforcement officers provided assistance to an FOT or otherwise participated in the apprehension of Targets or Other Subjects during the Designated Home Raids;

b) information-sharing agreements with any state or local government or law enforcement agency in and within Nassau and Suffolk such as, but not limited to Memoranda of Agreements, Memoranda of Understanding, or Interconnection Security Agreements; and

c) communications related to plans between a member of a FOT and any law enforcement officer or official of Nassau and Suffolk, or any political subdivision thereof, related to any Designated Home Raids;

## 8) Intra-ICE Communication About Designated Home Raids

Any communication related to any of the Designated Home Raids between: (1) the New York Field Office of the ICE Office of DRO; (2) DRO's main office at ICE headquarters; (3) ICE's National Fugitive Operations Program; and (4) any other component of ICE.

## C. Fee Waiver:

Families For Freedom is a non-profit New York-based multi-ethnic defense network by and for immigrants facing and fighting deportation. PRLDEF is a non-profit organization that uses the power of the law together with advocacy and education to protect opportunities for all Latinos to succeed in school and work, fulfill their dreams, and sustain their families and communities.

---

[13] *See* OIG Report at 26.

The Requesters are entitled to a waiver of all costs because the information that the Requesters seek "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the [Requesters'] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R § 5.11(k) (records furnished without charge if the information is in the public interest, and disclosure is not in commercial interest of institution).

The public has an interest in being informed about the manner in which federal immigration agents are enforcing immigration laws. In particular, the public has a strong interest in ensuring that immigration agents are operating within Constitutional limitations protecting individuals from unauthorized searches of their homes. The Records sought in this request will also further public understanding of the extent to which state or local governments are participating in the enforcement of federal immigration laws. There is almost no information in the public domain (aside from individual anecdotes) about the manner in which residential searches and arrests are being conducted, and the government's legal bases for those searches and arrests.

The Requesters have no commercial interest in the matter. The Requesters will make any information that it receives as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case therefore meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Alternately, the Requesters seeks all applicable reductions in fees pursuant to 6 C.F.R. § 5.11(d), because Requesters have no commercial interest in the matter. ICE should provide documents to Requesters in this category for the cost of reproduction alone, excluding charges for the first 100 pages of duplication. *See* 6 C.F.R. § 5.11(d). The Requesters agree to pay search, duplication, and review fees up to $200.00. If the fees will amount to more than $200.00, the Requesters request a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). If no fee waiver is granted and the fees exceed $200.00 please contact the Requesters undersigned counsel to obtain consent to incur additional fees.

### D. Expedited Processing:

Title 5 U.S.C. §552(a)(6)(E) governs expedited processing of requests for information in cases in which the entity requesting the Records demonstrates a compelling need. A "compelling need" has been found to exist in matters where a threatened loss of substantial due process rights are at issue. *See Ferguson v. F.B.I.*, 722 F. Supp. 1137, 1141-43 (S.D.N.Y. 1989).

There is a compelling need for the information that the Requesters are seeking, because there is an "exceptional need and urgency" to have access to the requested information. *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). The exceptional need is related to removal proceedings that have been instituted against John Doe and similarly situated individuals who were detained by ICE during a Home Raid at theirs residences. The information garnered from this request will allow the Requesters and others to document and remedy widespread abuses of individuals' due process and other constitutional rights regularly occurring during Home Raids. Numerous accounts of immigration enforcement agents entering homes without appropriate warrants and engaging in other

violations of law have received repeated and widespread media attention around Long Island, including Nassau and Suffolk.[14]  Accounts reveal widespread community and local government concern over disruptive, intimidating and, in some instances, illegal tactics employed by immigration agents conducting Home Raids to apprehend Targets and Other Subjects in residences throughout the region.[15]  Nevertheless, there is virtually no information in the public domain that indicates the bases on which and the methods by which ICE agents enter individuals' homes in the course of Home Raids to apprehend Targets and Other Subjects, or the government's policies and practices concerning the apprehension of Targets and Other Subjects in their homes.

If you deny any part of this request, please cite each specific reason or exemption to FOIA that you think justifies your refusal to release the information, and notify us of appeal procedures available to us under the law. The Requesters expect release of all segregable portions of otherwise exempt material. The Requesters reserve the right to appeal a decision to withhold information or a denial of fee waivers.

**E. Certification:**

The Requesters certify that the above information is true and correct to the best of the Requesters knowledge. *See* 6 C.F.R § 5.5(d)(3).

If you have any questions regarding the processing of this request, you may contact Peter Markowitz at (516) 463-5934.  Thank you for your consideration of this request.

Please furnish all applicable Records to:

> Peter Markowitz, Esq.
> Assistant Professor of Clinical Law
> Hofstra School of Law
> Immigrant Defense Clinic
> Joan Axinn Hall
> 108 Hofstra University

---

[14] *See* Editorial, "Profiling Hispanics," El Diario, February 16, 2008 (http://www.eldiariony.com/noticias/detail.aspx?section=25&desc=Editorial&id=1813696, accessed February 22, 2008); Jill P. Capuzzo, "Connecticut City Plans to Team Its Police With Federal Immigration Agents," New York Times, February 6, 2008 (http://www.nytimes.com/2008/02/06/nyregion/06immig.html?ref=nyregion, accessed February 22, 2008); Ioan Grillo, "Mexico Tries to Help Deportees," February 7, 2008 (http://www.time.com/time/world/article/0,8599,1710851,00.html, accessed on February 22, 2008); Julia Preston, "No Need for a Warrant, You're an Immigrant," October 14, 2007 (http://www.nytimes.com/2007/10/14/weekinreview/14preston.html, accessed February 22, 2008); Nina Bernstein, "Citizens Caught Up in Immigration Raids," October 4, 2007 (http://www.nytimes.com/2007/10/04/nyregion/04raid.html, accessed February 22, 2008); "Federal Raids Rankle Long Island Officials," October 2, 2007 (http://articles.latimes.com/2007/10/02/news/na-raids2.xml, accessed February 22, 2008).
[15] *Id.*

Hempstead, NY 11549-1080
Phone: (516) 463-5934


Sincerely,



PETER MARKOWITZ, ESQ.
Assistant Professor of Clinical Law
Hofstra School of Law
Immigrant Defense Clinic
Joan Axinn Hall
108 Hofstra University
Hempstead, NY 11549-1080
Phone: (516) 463-5934

On behalf of the Requesters




LINDA NAPIKOSKI
Legal Intern
Hofstra School of Law
Immigrant Defense Clinic
Community Legal Assistance Corp.
Joan Axinn Hall
108 Hofstra University
Hempstead, NY 11549

On behalf of the Requesters


RICHARD FACUNDO
Legal Intern
Hofstra School of Law
Immigrant Defense Clinic
Community Legal Assistance Corp.
Joan Axinn Hall
108 Hofstra University
Hempstead, NY 11549

On behalf of the Requesters

9



**U.S. Department of Homeland Security**
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

April 21, 2008

Peter Markowitz, Esq.
Hofstra School of Law - Immigrant Defense Clinic
108 Hofstra University - Joan Axinn Hall
Hempstead, NY 11549-1080

**Re: 2008FOIA2117**

Dear Mr. Markowitz, Esq.:

This acknowledges receipt of your April 9, 2008, Freedom of Information Act (FOIA)
request to the Immigration and Customs Enforcement (ICE), for 1) Policies and Procedures - all records created
or current and in use, between January 1, 2006 and the present, regarding policies and procedures related to
operations to identify, locate, or arrest suspected Targets and other subjects as well as to conduct Home Raids; 2)
Database Records - all records related to Targets and Other Subjects apprehended during the following
operations: Home Raids conducted in Nassau and Suffolk Counties; 3) Fugitive Operations Team Apprehension
Goal; 4) Fugitive Operations Team Plans; 5) National Fugitive Operations Program Weekly Statistical Reports; 6)
Records Related to Designated Home Raids; 7) State and Local Law Enforcement; and 8) Intra-ICE
Communication about Designated Home Raids. Your request was received in this office on April 18, 2008.

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part
5, the Department processes FOIA requests according to their order of receipt. Although DHS'
goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-
day extension of this time period. As your request seeks numerous documents that will
necessitate a thorough and wide-ranging search, DHS will invoke a 10-day extension for your
request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your
request, please contact our office. We will make every effort to comply with your request in a
timely manner; however, there are currently 189 open requests ahead of yours.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for
records in accordance with the DHS Interim FOIA regulations as they apply to educational requesters. As an
educational requester you will be charged 10-cents a page for duplication, although the first 100 pages are free.
We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted
before any further fees are accrued.

We have queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2008FOIA2117**. Please refer to this identifier in any future correspondence. You may contact this office at (202) 732-0300 or 1-866-633-1182.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Director





U.S. Department of Homeland Security
425 I Street, NW
Washington, DC  20536

**U.S. Immigration
and Customs
Enforcement**

April 21, 2008

Mr. Peter Markowitz, Esq.
Hofstra School of Law – Immigrant Defense Clinic
108 Hofstra University – Joan Axinn Hall
Hempstead, NY   11549-1080

**RE:  FOIA Case Number 2008-FOIA-2117**

Dear Mr. Markowitz:

This letter responds to your requests for a waiver of fees and the expedited processing of your
Freedom of Information Act (FOIA) request, dated April 9, 2008.  You have requested 1)
Policies and Procedures - all records created or current and in use, between January 1, 2006 and
the present, regarding policies and procedures related to operations to identify, locate, or arrest
suspected Targets and other subjects as well as to conduct Home Raids; 2) Database Records - all
records related to Targets and Other Subjects apprehended during the following operations:
Home Raids conducted in Nassau and Suffolk Counties; 3) Fugitive Operations Team
Apprehension Goal; 4) Fugitive Operations Team Plans; 5) National Fugitive Operations
Program Weekly Statistical Reports; 6) Records Related to Designated Home Raids; 7) State and
Local Law Enforcement; and 8) Intra-ICE Communication about Designated Home Raids.

Immigration and Customs Enforcement (ICE) evaluates fee waiver requests under the legal
standard set forth above and the fee waiver policy guidance issued by the Department of Justice
on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of
Information Act regulations[1].  These regulations set forth six factors to examine in determining
whether the applicable legal standard for fee waiver has been met.  I have considered the
following factors in my evaluation of your request for a fee waiver: (1) whether the subject of the
requested records concerns "the operations or activities of the government"; (2) whether the
disclosure is "likely to contribute" to an understanding of government operations or activities; (3)
whether disclosure of the requested information will contribute to the understanding of the public
at large, as opposed to the individual understanding of the requestor of a narrow segment of
interested persons; (4) whether the contribution to public understanding of government operations
or activities will be "significant"; (5) whether the requester has a commercial interest that would
be furthered by the requested disclosure; and (6) whether the magnitude of any identified
commercial interest to the requestor is sufficiently large in comparison with the public interest in
disclosure that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful examination of the factors listed above, I have
determined to deny your request for a waiver of fees in the processing of your request.

---

[1] 6 CFR § 5.11(k).

...igration and Customs E... ...cement (ICE) evaluates requests for e... ...dited processing based upon the legal standards set forth in the Electronic Freedom of Information Act Amendments of 1996 as incorporated into the Department of Homeland Security's Freedom of Information Act regulations[2]. These regulations establish two factors to examine in determining whether the applicable legal standard for expedited processing has been met. I have considered the following factors in my evaluation of your request for expedited processing: (1) whether the lack of an expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; and (2) if there is an urgency to inform the public about an actual or alleged federal government activity, if the request is made by a person primarily engaged in disseminating information.

Upon review of your request and a careful consideration of the factors listed above, I have determined to deny your request for expedited processing.

The undersigned is the person responsible for this determination. You may appeal this finding by writing to the Associate General Counsel (General Law), Department of Homeland Security, FOIA Appeals, Washington, DC 20528, within 60 days from the date of this determination. It should contain any information and state, to the extent possible, the reasons why you believe the initial determination should be reversed and the envelope in which the appeal is mailed in should be prominently marked "FOIA Appeal." The Privacy Office's determination will be administratively final.

If you have any questions pertaining to your request, please contact the FOIA Office at (202) 732-0300.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

---

[2] 6 CFR § 5.5(d).

www.ice.gov



BENJAMIN N. CARDOZO SCHOOL OF LAW • YESHIVA UNIVERSITY

PETER L. MARKOWITZ
ASSISTANT CLINICAL PROFESSOR

Director, Immigration Justice Clinic

212.790.0340
FAX 212.790.0256
E-MAIL pmarkowi@yu.edu

June 12, 2008

Associate General Counsel
Department of Homeland Security
FOIA Appeals
Washington, D.C. 20528

RE:  *Appeal of fee waiver denial on FOIA Request Case # 2008-FOIA-2117*

To Whom It May Concern:

I am writing to appeal the denial of the fee waiver request for the above referenced FOIA request.  The agency initially denied the request for a fee waiver by letter dated April 21, 2008 (attached) but gave no explanation for its determination.  The denial letter merely recited the regulatory factors for a fee waiver determination but contained no analysis applying those factors to this request.

The instant FOIA request seeks the release of records on a matter of significant public concern, namely, records pertaining to United States Immigration and Customs Enforcement agency's ("ICE") policies, procedures, and practices related to its current campaign of pre-dawn home immigration raids without judicial warrants (hereinafter "home raids").  In recent years, ICE has greatly expanded its use of home raids and, accordingly, the efficacy, legality, and wisdom of this tactic has become the source of considerable concern for the general public as documented in the explosion of news reports on the subject.  The Plaintiffs' FOIA request seeks, *inter alia*, specific information related to the widespread accounts of ICE officers' violations of the Fourth Amendment during the course of such home raids.  This information is not just relevant to the larger public policy questions surrounding the home raids but also to specific and central issues in the pending immigration removal proceedings arising out of the home raids.

The FOIA statute requires agencies to grant requesters a fee waiver or reduction if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). ICE has promulgated a regulation setting forth various factors to be considered in

determining whether the statutory criteria are met.  6 C.F.R § 5.11(k).  As set forth below, when applied to the facts of this case, all of the regulatory factors militate in favor of granting a fee waiver:

(1) The subject of the request: The subject of the request here clearly "concerns 'the operations or activities of the government.'"  6 C.F.R § 5.11(k)(2)(i).  The subject of the requested records concerns the "identifiable operations or activities of the federal government," to wit: the Immigration of Customs Enforcement agency's current and ongoing campaign of conducting home raids without judicial warrants.  *Id.*

(2) The informative value of the information to be disclosed:  There is virtually no information in the public domain that indicates the bases on which or the methods by which ICE agents conduct home raids, or statistics about the prevalence of such raids. The requesters have pledged to make any information obtained as the result of this FOIA request available to the public, including the press, at no fee. Accordingly, the information sought in the instant FOIA is very "'likely to contribute' to an understanding of government operations or activities."  6 C.F.R § 5.11(k)(2)(ii).

(3) The contribution to an understanding of the subject by the public likely to result from disclosure: Requester Families for Freedom is in an excellent position to ensure that the information obtained will "contribute to 'public understanding.'"  6 C.F.R § 5.11(k)(2)(iii).  Families for Freedom has significant expertise in this area as they are a well established non-profit organization dedicated to educating and organizing families and communities affected by deportation. A broad audience of the people is interested in this subject, as documented by the widespread press coverage of immigration raids and the many press releases issued by ICE on the subject.[1]

(4) The significance of the contribution to public understanding: While there is widespread public interest in the subject matter of the instant FOIA request there is only anecdotal accounts of these home raids.  Accordingly, obtaining clear documentation of the policies procedures, and practices of ICE would "significantly" contribute to the public's understanding.  6 C.F.R § 5.11(k)(2)(iv).

(5) The existence and magnitude of a commercial interest: The Requesters have absolutely no commercial interest that would be furthered by the requested disclosure. 6 C.F.R § 5.11(k)(3)(i).

---

[1] *See, e.g.,* Anna Gorman, U.S.*-born children feel effect of raids: Immigration agents try to act humanely when a parent is arrested, officials say. Critics aren't convinced,* Los Angeles Times, June 8, 2008; Nina Berstein, *Immigrant Workers Caught in Net Cast for Gangs,* N.Y. Times, Nov. 25 2007. A Westlaw search of newspapers articles conducted on June 12, 2008 found 736 articles written in 2007 and 2008 with the word "raid" together with the words "immigration" or "immigrant" in the title. *See also* ICE Press Releases at < http://www.ice.gov/pi/news/newsreleases/index.htm>.

(6) The primary interest in disclosure: This factor is not relevant since the Requesters have no commercial interest that would be furthered by the requested disclosure.  6 C.F.R § 5.11(k)(3)(i).

Since all factors militate in favor of finding that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," 5 U.S.C. § 552(a)(4)(A)(iii), a full fee waiver should be granted.  If no fee waiver is granted, we request all applicable fee reductions.

If you need any additional information or documentation, please let me know. Thank you for your time and consideration.

Respectfully submitted,

Peter Markowitz, Esq.
Assistant Clinical Professor of Law
Director, Immigration Justice Clinic


Encl:   Initial FOIA Request
        ICE Letter Denying Fee Waiver
        Letter to ICE notifying them of counsel change of address